JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 11-06108 MMM (AGRx) | Date | August 2, 2011 |

| | |
|---|---|
| Title | *Stewart v. Wachovia Mortgage Corporation et. al.* |

| | |
|---|---|
| Present: The Honorable | MARGARET M. MORROW |

| ANEL HUERTA | None |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** **Order Granting Plaintiff's'** *Ex Parte Application* **to Remand**

     On July 11, 2011, plaintiff Stephen Stewart commenced this action in Los Angeles Superior Court against defendants Wachovia Mortgage Corporation and Wells Fargo Bank, N.A. ("Wells Fargo").[1] On July 25, 2011, defendant Wachovia Mortgage, which is a division of Wells Fargo, removed the action to this court, invoking the court's diversity jurisdiction.[2] On August 1, 2011, plaintiff filed an emergency *ex parte* application to remand the action to Los Angeles Superior Court, or in the alternative, for a temporary restraining order enjoining the foreclosure sale of his residence.[3] For the reasons stated below, the court grants plaintiff's *ex parte* application to remand.

**I. FACTUAL BACKGROUND**

     The complaint seeks, *inter alia*, to enjoin the non-judicial foreclosure sale of plaintiff's home,

---

     [1]Notice of Removal ("Removal"), Docket No. 1 (Jul. 25, 2011), Exh. A (Complaint).

     [2]Removal.

     [3]Emergency Ex Parte Application to Remand, Docket No. 8 (Aug. 1, 2011); Amendment to Emergency Ex Parte Application ("Ex Parte"), Docket No. 10 (Aug. 1, 2011).

which is currently scheduled to take place on August 3, 2011.[4] On July 11, 2011, the date plaintiff filed this action, he sought, and was the state court issued, a temporary restraining order and order to show cause re preliminary injunction, enjoining the foreclosure sale of his home.[5] The temporary restraining order was to expire on July 26, 2011, the date set for a hearing on the court's order to show cause.[6] Defendants removed the action to this court one day prior to the scheduled hearing.

The notice of removal asserts that there is complete diversity of citizenship between the parties because plaintiff is a California citizen – a fact no party disputes – and Wells Fargo, a national banking association, is a citizen of Sioux Falls, South Dakota, the state where its main headquarters as listed on in its articles of incorporation are located.[7] In his *ex parte* application to remand, plaintiff contends that complete diversity is lacking because Wells Fargo's principal place of business is in San Francisco, California, and Wells Fargo is thus a California citizen as well as a South Dakota citizen.

## II. DISCUSSION

### A.    Legal Standards Governing Removal Jurisdiction

The right to remove a case to federal court is entirely a creature of statute. See *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979). The removal statute, 28 U.S.C. § 1441, allows defendants to remove when a case originally filed in state court presents a federal question or is between citizens of different states and involves an amount in controversy that exceeds $75,000. See 28 U.S.C. §§ 1441(a), (b); see also 28 U.S.C. §§ 1331, 1332(a). Only state court actions that could originally have been filed in federal court may be removed. 28 U.S.C. § 1441(a); see *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir. 1988).[8]

The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction," and

---

[4]Ex Parte at 6.

[5]*Id.*, Ex Parte, Declaration of Stephen Stewart ("Stewart Decl."), ¶18, Exh. I.

[6]*Id.*

[7]Removal at 3, 5. The notice of removal explains that defendant Wachovia Mortgage Corporation merged into Wells Fargo on May 6, 2011. (See Removal at 2-3; Removal, Exh C (Wachovia Mortgage Corporation's Articles of Merger).) Thus, Wells Fargo's citizenship is the sole relevant factor for the purposes of the court's analysis.

[8]The parties agree that the amount in controversy exceeds $75,000, as plaintiff's equity in his home is approximately $114,000. (Ex parte at 22.) The sole issue before the court, therefore, is whether complete diversity of citizenship exists.

2

"[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Boggs v. Lewis*, 863 F.2d 662, 663 (9th Cir. 1988), *Takeda v. Northwestern Nat'l Life Ins. Co.*, 765 F.2d 815, 818 (9th Cir. 1985), and *Libhart*, 592 F.2d at 1064). "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id.* (citing *Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 712 n. 3 (9th Cir. 1990), and *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988)).

### B. Requirements for Diversity Jurisdiction

"The district courts . . . have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. . . ." 28 U.S.C. § 1332(a); see also *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) ("[J]urisdiction founded on [diversity] requires that the parties be in complete diversity and the amount in controversy exceed $75,000"). In any case where subject matter jurisdiction is premised on diversity, there must be complete diversity, i.e., all plaintiffs must have citizenship different than all defendants. See *Strawbridge v. Curtis*, 7 U.S. (3 Cranch) 267 (1806); see also *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 & n. 3 (1996).

#### 1. Legal Standard Governing the Citizenship of National Banking Associations for Diversity Purposes

28 U.S.C. § 1348 states:

> "The district courts shall have original jurisdiction of any civil action commenced by the United States, or by direction of any officer thereof, against any national banking association, any civil action to wind up the affairs of any such association, and any action by a banking association established in the district for which the court is held, under chapter 2 of Title 12, to enjoin the Comptroller of the Currency, or any receiver acting under his direction, as provided by such chapter. All national banking associations shall, for the purposes of all other actions by or against them, be deemed citizens of the States in which they are respectively located."

In *Wachovia Bank v. Schmidt*, 546 U.S. 303 (2006), the United States Supreme Court considered whether, as used in § 1348, "located . . . signal[ed] . . . that the bank's citizenship is determined by the place designated in the bank's articles of association as the location of its main office," or rather "that a national bank is a citizen of every State in which it maintains a branch[.]" *Id.* at 306-07. The Court recognized that "'located' is not a word of 'enduring rigidity,' but one that gains its precise meaning from context," and therefore considered the unique historical circumstances giving rise to Congress's adoption of § 1348. *Id.* at 307 (citing *Citizens & Southern Nat. Bank v. Bougas*, 434 U.S. 35, 44 (1977)). It reasoned:

3

> "When Congress first authorized national banks in 1863, it specified that any 'suits, actions, and proceedings by and against [them could] be had' in federal court. National banks thus could 'sue and be sued in the federal district and circuit courts solely because they were national banks, without regard to diversity, amount in controversy or the existence of a federal question in the usual sense.' State banks, however, like other state-incorporated entities, could initiate actions in federal court only on the basis of diversity of citizenship or the existence of a federal question. Congress ended national banks' automatic qualification for federal jurisdiction in 1882. An enactment that year provided in relevant part:
>
>> '[T]he jurisdiction for suits hereafter brought by or against any association established under any law providing for national-banking associations . . . shall be the same as, and not other than, the jurisdiction for suits by or against banks not organized under any law of the United States which do or might do banking business where such national-banking associations may be doing business when such suits may be begun[.]' . . .
>
> Under this measure, national banks could no longer invoke federal-court jurisdiction solely 'on the ground of their Federal origin;' instead, for federal jurisdictional purposes, Congress placed national banks 'on the same footing as the banks of the state where they were located.'" *Id.* at 309-10 (citations omitted).

The Court further explained that, "[i]n 1887 revisions to prescriptions on federal jurisdiction, Congress replaced the 1882 provision on jurisdiction over national banks and first used the 'located' language today contained in § 1348. . . . Like its 1882 predecessor, the 1887 Act 'sought to limit . . . the access of national banks to, and their suability in, the federal courts to the same extent to which non-national banks [were] so limited." *Id.* at 310-11. Addressing the precise question before it, the Court noted that "[n]ot until 1994 did Congress provide broad authorization for national banks to establish branches across state lines." *Id.* at 314. Considering Congress' purpose of achieving jurisdictional parity between state and national banks, and the fact that the relevant language in § 1348 was placed in the statute at a time when national banks could not operate branches outside their home state, the Court held that

> "a national bank, for § 1348 purposes, is a citizen of the State in which its main office, as set forth in its articles of association, is located. Were we to hold, as the Court of Appeals did, that a national bank is additionally a citizen of every State in which it has established a branch, the access of a federally chartered bank to a federal forum would be drastically curtailed in comparison to the access afforded state banks and other state-incorporated entities. Congress, we are satisfied, created no such anomaly." *Id.* at 307.

4

The Court did not consider, or have occasion to consider, whether, given the imprecision of the word "located," a national bank might *also* be "located," for purposes of § 1348, in the state where it maintains its principal place of business. Indeed, it specifically noted that in the case before it, the bank's principal place of business *was* its main office. It stated:

"To achieve complete parity with state banks and other state-incorporated entities, a national banking association would have to be deemed a citizen of both the State of its main office and the State of its principal place of business. Congress has prescribed that a corporation 'shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business.' 28 U.S.C. § 1332(c)(1). The counterpart provision for national banking associations, § 1348, however, does not refer to 'principal place of business;' it simply deems such associations 'citizens of the States in which they are respectively located.' The absence of a 'principal place of business' reference in § 1348 may be of scant practical significance for, in almost every case, as in this one, the location of a national bank's main office and of its principal place of business coincide." *Id.* at 317 n. 9 (additional citation omitted)."

The Ninth Circuit has similarly not addressed whether, for purposes of § 1348, a national banking association is "located" in the state where it has its principal place of business. As neither the Supreme Court nor the Ninth Circuit has ruled on the issue several courts in the circuit have turned for guidance to the Fifth Circuit's decision in *Horton v. Bank One, N.A.*, 387 F.3d 426 (5th Cir. 2004), and to the Seventh Circuit's decision in *Firstar Bank, N.A. v. Faul*, 253 F.3d 982 (7th Cir. 2001). See, e.g., *Saberi v. Wells Fargo Home Mortg.*, No. 10CV1985 DMS (BGS), 2011 WL 197860, *2 (S.D. Cal. Jan. 20, 2011) (citing *Horton* and *Firstar* with approval); *Mount v. Wells Fargo Bank, N.A.*, No. CV 08-6298 GAF (MANx), 2008 WL 5046286, *2 (C.D. Cal. 2008) (same). "Both ]the *Horton* and *Firstar*] cases," decided before *Schmidt*, "rejected the contention that a national bank is located wherever it has branches, because that would greatly reduce its access to the federal courts, and both concluded a national bank is citizen of the state of its principal place of business and the state listed in its organization certificate or articles of association." *Mount*, 2008 WL 5046286 at *2 (citing *Horton*, 387 F.3d at 436; *Firstar Bank*, 253 F.3d at 994).

### 2. Whether Wells Fargo Is a Citizen of California

Wells Fargo "has regularly described its principal place of business as San Francisco, California." *Mount*, 2008 WL 5046286 at *1 (citing, e.g., *Jojola v. Wells Fargo Bank, N.A.*, No. C71-900 SAW, 1973 WL 158166, *1 (N.D. Cal. May 2, 1973); *Wells Fargo Bank, N.A. v. Siegel*, No. 05 C 5635, 2007 WL 1686980, *1 (N.D. Cal. June 8, 2007); *Miles v. Wells Fargo Bank*, No. C 06-01991 (N.D. Cal.)). Several district courts have therefore concluded that Wells Fargo is a California citizen for diversity of citizenship purposes. In *Mount*, the court relied on *Horton* and *Firstar* to conclude that the term "located" included a national bank's principal place of business. It therefore granted the California plaintiff's motion to remand. *Mount*, 2008 WL 5046286 at *2. In

5

so doing, the *Mount* court noted that *Schmidt* had "declined to state whether a national banking association is also a citizen of the state of its principal place of business, noting that the location of the bank's 'main office' and its principal place of business will normally coincide." *Id*. at *1. Likewise, in *Saberi*, 2011 WL 197860, the court found *Horton* and *Firstar* persuasive and granted a California plaintiff's motion to remand. Addressing *Schmidt*, the *Saberi* court noted its discussion of the fact that unlike 28 U.S.C. § 1332, § 1348 contained no explicit reference to a national bank's principal place of business. See *id*. at *2-3 (quoting *Schmidt*, 546 U.S. at 317 n. 9). It concluded that "in referencing the statutory distinction, the Supreme Court did not go so far as to prohibit the interpretation set forth in *Horton* and *Firstar*, but rather merely noted that the difference in statutory language 'may be of scant practical significance.'" *Id*. at *3. See also *Goodman v. Wells Fargo Bank, NA*, No. CV 11–2685 JFW (RZx), 2011 WL 2372044, *2 (C.D. Cal. Jun. 1, 2011) (observing that, "'because this issue [was] not presented by the parties or necessary to [the] decision,' the Supreme Court declined to state whether a national banking association is also a citizen of the state of its principal place of business, noting [only] that the location of the bank's 'main office' and its principal place of business will normally coincide," and finding *Horton* and *Firstar* persuasive in granting plaintiff's motion to remand).

The court finds these cases persuasive. First, *Schmidt* did not decide whether a national bank is "located" in the state where it has its principal place of business, when that location is different from the state in which its main headquarters are situated because this issue was not before it. Second, the Court noted that "'located' is not a word of 'enduring rigidity,' . . . but one that gains its precise meaning from context," *Schmidt*, 546 U.S. at 306-07. It thus signaled that the defintional content it provided for the word did not foreclose the possibility that further context would support an expanded definition. Finally, and most significantly, the Court emphasized Congress' desire to provide jurisdictional parity for state-chartered banks and national banks. A state-chartered bank is a citizen not only of the state in which it is incorporated, but of the state where its principal place of business is located.  28 U.S.C. § 1332.[9]  Since Congress wished national banks to have the same access to federal courts as state-chartered banks, interpreting § 1348 so as to foreclose the possibility that a national bank is "located" where it maintains its principal place of business would not further Congress' purposes. Consequently, the court finds *Horton*, *Firstar*, and the California district court decisions that have adopted their logic persuasive, and concludes that Wells Fargo is a California

---

[9]Because § 1348 uses the imprecise term "located," the court does not believe that its omission of a specific reference to "principal place of business" is determinative. While § 1332 expressly states that a corporation is a citizen of the state in which it has its principal place of business, including such a reference in that statute was necessary because it specifically provides that the other state of corporate citizenship is the state of incorporation. Given the Congressional desire for parity of treatment between state-chartered and national banks explicated by the Court in *Schmidt*, the court believes the differing language of § 1332 and § 1348 does not signal an intent to treat state-chartered and national banks differently for federal jurisdiction purposes, but rather reflects the imprecision of "located" as compared with "state of incorporation."

6

citizen.

The court is aware that several other district court decisions have reached a contrary conclusion. In *Cochran v. Wachovia Bank, N.A., et al.*, Case No. CV 10-018 CAS (AGRx), 2010 U.S. Dist. LEXIS 38379 (C.D. Cal. Mar. 9, 2010), the court denied a California plaintiff's motion to remand, reasoning that the Seventh Circuit had "abandoned" its analysis in *Horton* "by implication" in *Hicklin Engineering, L.C. v. Bartell*, 439 F.3d 346 (7th Cir. 2006). There, the Seventh Circuit was tasked with determining the citizenship of a limited liability company, certain of whose members were trusts. It looked to the citizenship of the trustees to determine the citizenship of the trusts, and noted that some were national banks. It then observed that "until *Wachovia Bank v. Schmidt* . . . issued six days after this appeal was argued, there was a distinct possibility that national banks would be deemed citizens of every state in which they had offices," but that following *Schmidt*, "national banks are citizens only of the states in which their main offices are located." *Id.* at 347. It contrasted the narrow holding in *Schmidt* with prior law that would have made national banks citizens of every state in which they had an branch. The *Hicklin* court did not cite *Firstar Bank*, nor address the reasoning employed in that case. Nor could it have overruled *Firstar*, as both are panel decisions. Finally, *Hicklin* did not address whether, or when, a national bank could be deemed to be "located" in the state of its principal place of business. The court thus respectfully disagrees that *Hicklin* "abandoned" *Horton* "by implication."

In *DeLeon v. Wells Fargo Bank, N.A.*, 729 F.Supp.2d 1119 (N.D. Cal. 2010), the court opined that, "[w]hile the holding in *Schmidt* could be narrowly limited to a rejection of a 'branch office' interpretation of § 1348, thus remitting dual citizenship based on a bank's principal place of business, lower courts since *Schmidt* have taken the view that the 'main office' standard is the only way to determine the citizenship of a national bank." *Id.* at 1122 (citing *Hicklin*, 439 F.3d at 348). As noted, the court does not share this reading of *Hicklin*. Noting that *Schmidt* "recognized the imperfect parity between corporations and national banks" evident in §§ 1332 and 1348, and commented that the Supreme Court's recent decision in *Hertz v. Friend*, 130 S.Ct. 1181(2010) – which defined a corporation's "principal place of business" for purposes of § 1332 as its "nerve center" where "the corporation's high level officers direct, control, and coordinate the corporation's activities," see *id.* at 1185 – "implicitly furthered parity between state chartered banks and corporations and national banks." *Id.* at 1123. The court thus appeared to assume, as had the Supreme Court in *Schmidt* – that in most cases (although not in the case of Wells Fargo), a national bank's main office will also be its principal place of business. After citing district court cases finding that a national bank is a citizen only of the state in which its main office is located, the court concluded that "[i]n the absence of controlling Ninth Circuit authority, [it would] decline Plaintiffs' invitation to apply a principal place of business test to Wells Fargo." *Id.* at 1124. Here, the court finds cases reaching the contrary conclusion more persuasive for the reasons stated in this order. Mindful of the Supreme Court's discussion of Congress' purpose in adopting § 1348, the court concludes that, to the extent *Hertz* has relevance, it suggests that *Schmidt* should not read to foreclose

the possibility that a national bank is a citizen of the state where it has its principal place of business.[10]

### III. CONCLUSION

For the reasons stated, the court concludes that Wells Fargo is a citizen of California. Because complete diversity is lacking, plaintiff's *ex parte* application to remand is granted. The clerk is directed to remand the matter forthwith.

---

[10]Another case cited by defendant in its notice of removal – *Nguyen v. Wells Fargo Bank, N.A.*, 749 F.Supp.2d 1022 (N.D. Cal. 2010), relies on *Peralta v. Countrywide Homes Loans, Inc.*, No. C 09-3288 PJH, 2009 WL 3837235 (N.D. Cal. Nov. 16, 2009), which read footnote 9 of *Schmidt* as "expressing skepticism" that a national bank is located where it has its principal place of business. See also *Excelsior Funds, Inc. v. JP Morgan Chase Bank, N.A.*, 470 F.Supp.2d 312, 316-17 (S.D.N.Y. 2006) (same.)  The court disagrees for the reasons stated herein.